Frank Stanoch v. Commissioner.
Stanoch v. Commissioner
Docket No. 58193.
United States Tax Court
T.C. Memo 1959-132; 1959 Tax Ct. Memo LEXIS 114; 18 T.C.M. (CCH) 583; T.C.M. (RIA) 59132; June 29, 1959
*114 Held: 1. That the accounting records for petitioner's bar business were incomplete, inaccurate, and unreliable; that it was proper for the respondent to reconstruct the income of the business for each year by the measurement method, but that he erred in using a three-quarter-ounce measure; that reconstruction based upon a 1-ounce measure is reasonable and proper; that an allowance should be made for beer spillage; and that petitioner understated in his returns for each year his income from his business. 2. That false and fraudulent returns were filed for each year and that part of each deficiency is due to fraud with intent to evade tax. 3. An addition to tax for each of the years involved under section 294(d)(2) is proper. Frank J. Warner, Esq., Rand Tower, Minneapolis, Minn., for the petitioner. Richard G. Worden, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax for the taxable years 1944 through 1948, 50 per cent additions to the deficiencies under section 293(b), 1939 Code, and 6 per cent additions to the tax under section 294(d)(2) as follows: Sec.
Sec.
Year
Deficiency
293(b)
294(d)(2)
1944
$10,146.44
$ 5,073.22
$ 428.79
1945
13,371.88
6,685.94
834.02
1946
11,124.73
5,562.36
635.40
1947
24,949.22
12,474.61
1,464.87
1948
17,412.91
8,706.46
1,012.69
The questions for decision are: (1) Whether petitioner realized in each of the taxable years a greater amount of taxable income than was reported in each return. (2) Whether all or part of each deficiency, if any, was due to fraud with intent to evade tax within the meaning of section 293(b), 1939 Code. (3) Whether the addition to tax for each year under section *116 294(d)(2) was properly imposed because of underestimates of estimated tax. Findings of Fact Petitioner, a resident of Minneapolis, Minnesota, filed timely his returns for the taxable years with the collector of internal revenue for the district of Minnesota. From 1937 to 1955 petitioner operated a bar, known as Frank's Place on Second Street North, Minneapolis, from which he derived his principal income. The bar was located in a general commercial and industrial area and was patronized by men who worked at various trades. Petitioner's principal source of income was the sale of liquor, beer, and wine. Additional income was received from incidental sales of tobacco products, candy, potato chips, popcorn, and coin-operated pinball machines. Petitioner filed declarations of estimated tax, and he made payments of estimated income tax, or received credits therefor, for each of the taxable years 1944 through 1948, as follows: Amount
Amount Paid
Year
Declared
or Credited
1944
$3,000.00
$3,000.00
1945
304.00
304.00
1946
600.00
600.00
1947
534.78
534.78 (credit)
1948
534.78
534.78 (credit)
The deficiency notice which gives rise to the instant *117 proceedings was mailed on March 7, 1955. Petitioner failed to include as income on his Federal income tax returns for the taxable years interest received as follows: Year
Amount
1945
$ 45.48
1946
204.96
1947
97.25
1948
2.18
Petitioner's accounting records for the taxable year consisted of bound cash books in which petitioner entered the amounts of purchases, sales, and expenses. The entries are in pencil in petitioner's handwriting. They were made in a single entry form. Petitioner used the cash method of accounting, with adjustments in his income tax returns for inventories. There were erasures and alterations in petitioner's cash books, exhibits 2, 3, and 4, and in the book for the year 1948, which were observed by respondent's agents, as follows: No. of Erasures
Year
and Alterations
1944
18
1945
62
1946
38
1948
49
Total
167
The erasures appear in the $100 entry to sales column on Fridays and Saturdays. Some of the sales entries in exhibits 2, 3, and 4 were examined by an examiner of questioned documents for the Treasury Department. A detailed examination and restoration of the present and original entries to sales *118 for the days of the week appearing on the respective page dates of exhibits 2, 3, and 4 disclosed the following: Page
Present
Original
Date
Day
Entry
Entry
1- 8-44
Friday
$206.30
$306.30
1-22-44
Friday
269.35
No erasure
1-29-44
Saturday
246.45
446.45
3-25-44
Friday
297.40
397.40
4- 1-44
Saturday
241.25
341.25
4- 8-44
Saturday
200.30
300.30
4-15-44
Saturday
200.70
400.70
10-14-44
Saturday
208.70
No erasure
Friday
206.80
No erasure
12-30-44
Friday
260.00
Undecipherable
1-27-45
Saturday
385.35
Undecipherable
Friday
202.80
Undecipherable
3- 3-45
Saturday
325.65
225.65
Friday
365.95
265.95
3-10-45
Saturday
330.80
230.80
Friday
314.75
214.75
4- 7-45
Saturday
330.05
230.05
4-21-45
Saturday
322.55
222.55
Friday
309.30
209.30
6-16-45
Saturday
286.35
486.35
Friday
368.50
268.50
8- 4-45
Saturday
324.10
224.10
9-15-45
Saturday
256.75
Undecipherable
9-22-45
Saturday
360.85
260.85
10- 6-45
Saturday
303.70
203.70
10-20-45
Saturday
314.00
214.00
Friday
317.60
217.60
10-27-45
Saturday
327.80
227.80
Friday
372.35
227.35
11-10-45
Saturday
269.50
Undecipherable
Friday
263.70
463.70
12-15-45
Saturday
480.00
280.00
1-19-46
Saturday
300.60
200.60
Friday
339.60
Undecipherable
2- 2-46
Saturday
373.60
173.60
Friday
382.40
Undecipherable
2-16-46
Saturday
317.85
217.85
6- 8-46
Friday
354.40
254.40
6-15-46
Saturday
387.40
287.40
6-22-46
Saturday
278.20
Undecipherable
7-13-46
Saturday
326.35
226.35
7-20-46
Saturday
341.35
241.35
7-27-46
Saturday
398.30
298.30
*119 The examiner found substantial similar alterations, not subjected to a detailed analysis and restoration, in entries to sales made for each of the years 1944-1946, inclusive. Petitioner's income tax returns for each of the years 1941-1948, inclusive, were prepared by an accountant from petitioner's cash books. Petitioner's accounting books and records were inadequate and incorrect, and did not reflect his entire, true gross receipts and income for each of the years 1944-1948, inclusive. During the taxable years, petitioner purchased nearly all of his inventory of liquor and wine from Ed. Phillips and Sons in Minneapolis, and, beer from the Minneapolis Brewing Company. Petitioner purchased liquor in quart bottles (each bottle containing 32 ounces), and in one-fifth gallon bottles (each bottle containing 25.6 ounces). Beer was purchased in cases of 24 bottles per case, and in one-half barrel kegs, each keg containing 15 3/4 gallons. Wine was purchased in gallon bottles, one-half gallon bottles, quart bottles, and one-fifth gallon bottles. Petitioner's purchases in each of the years 1944 through 1948 of liquor, beer, and wine were of the brands and in the quantities and container *120 sizes which are set forth in exhibit A, which is incorporated herein by this reference. Petitioner's inventories of liquor, beer, and wine available for sale as of December 31, 1945, 1946, 1947, and 1948 were in the amounts and container sizes which are set forth in exhibit B, which is incorporated herein by this reference. Exhibits N, R, and V are incorporated herein by this reference. Petitioner's inventory of liquor, beer, and wine available for sale as of December 31, 1945, 1946, 1947, and 1948 was as follows: Merchandise
1945
1946
1947
1948
Beer, 1/2 bbl.
5
0
5
9
Beer, cases
8
0
4
10
Wine, qts.
0
0
0
0
Wine, fifths
12
12
0
0
Wine, gals.
16
8
12
20
Liquor, qts.
876
72
2,172
900
Liquor, fifths
1,178
1,080
108
312
Petitioner's inventories of liquor, beer, and wine available on January 1, 1944, and December 31, 1944, as reconstructed by respondent, were as follows: Merchandise
1/1/44
12/31/44
Beer, 1/2 bbl.
3
2
Beer, cases
5
3
Wine, gallons
8
4
Liquor, qts., lowest prices
538
312
Liquor, fifths
727
421
Petitioner's purchases of beer, wine, and liquor during 1944-1948, inclusive, *121 were in the total quantities set forth below: Merchan-
dise
1944
1945
1946
1947
1948
Beer, 1/2
bbl.
190
83
129
141
121
Beer,
cases
905
1,319
1,106
1,775
1,875
Wine, qts.
96
320
208
448
342
Wine,
fifths
36
72
24
216
144
Wine,
gals.
24
80
52
112
85 1/2
Liquor,
qts.
3,188
4,968
1,812
5,832
10,768
Liquor,
fifths
7,558
10,930
13,223
13,022
2,584
Petitioner overstated his purchases for the years 1944, 1945, 1946, 1947, and 1948 in the respective amounts of $224.90, $694.29, $69.56, $2,082.64, and $478.25. During the taxable years petitioner charged prices for drinks of various brands of liquor, wine, and beer (in cents) as follows: 1/1/44
1/1/47
thru
thru
Brand
12/31/46
12/31/48
Old Grand Dad
40
45
Old Crow
40
45
Old Taylor
40
45
Canadian Club
40
45
McBrayer
30
35
Hill & Hill
30
35
Hermitage
30
35
Bond & Lillard
30
35
H & W Deluxe
30
35
Sunnystraight
30
35
Courtesy Club
25
30
Sunny Brook
25
30
Log Cabin
25
30
Hart Brandy
25
30
P M Deluxe
25
30
Black Gold
25
30
H & W Imperial
25
30
Dell Spec. Reserve
25
30
Ron. Mer. Gold
25
30
Dekuypers Blackberry Brandy
25
30
Dekuypers Rock Rye
25
30
Phillips Peppermint Schnaps
25
30
Old Angus
25
30
Dekuypers Sloe Gin
25
30
H & W Blackberry
25
30
H & W London Dry
25
30
P M Spirit Mas
25
30
Aristocrat Brandy
25
30
Phillips Blackberry Liq.
25
30
Gilbey's Dry Gin
25
30
U.S. Club
25
30
J. W. Red
25
30
Mt. Vernon
25
30
Farmdale Bl. Mas
25
30
Cedar Brk Mason
25
30
Phillips Sloe Gin
25
30
Old Overholt
25
30
Mello Red
25
30
Carlotta Ginger
25
30
Pete Hagen Rye
25
30
Old Plaid Scot
25
30
Old Smug Scot
25
30
Maraca Gold
25
30
Muy Blackberry Brandy
25
30
P M Regal
25
30
National Eagle
25
30
Town Tavern
25
30
Rewco Rye
25
30
Tweed Blend
25
30
B. Hills Mallort
25
30
O J Pep. Schn.
25
30
Fonseca Brandy
25
30
Century Club
25
30
H & W Rock Rye
25
30
Phillips Blackberry Brandy
25
30
Lejon Brandy
25
30
P M Spirit Blend
25
30
St C Rumgold
25
30
Courtesy Pep. Schn.
25
30
Phillips Bond
25
30
Mer Sher
25
30
Spey Royal
25
30
Tap Beer - 10 cents per 10 oz. glass
Jan. 1, 1944 thru Dec. 31, 1948
Bottle Beer - 20 cents per bottle
Jan. 1, 1944 thru Dec. 31, 1948
Wine - 20 cents per 2 1/2 oz. glass
Jan. 1, 1944 thru Dec. 31, 1948
*122 Petitioner sold candy, cigarettes, and tobacco at an average of 10 per cent markup on cost during the taxable years. Petitioner realized income from coin-operated pinball machines of $7.50 per week during all of the taxable years. Petitioner's reported gross sales, cost of goods sold, gross profit, and net income as disclosed by his Federal income tax returns for each of the years 1941 to 1948, and the resulting gross margin per cent, were as follows: Cost of
Gross Margin
Net Income
Year
Gross Sales
Goods Sold
Gross Profit
Percent
or Loss
1941
$32,647.55
$21,520.91
$11,126.64
34
$ 4,460.09
1942
36,108.40
17,124.14
18,984.26
52.5
9,877.67
1943
46,731.98
17,092.58
29,639.40
63.4
21,774.31
1944
48,386.80
38,995.07
9,391.73
21.3
884.27
1945
67,170.50
52,085.34
15,085.16
22.4
5,210.79
1946
71,622.50
56,513.50
15,109.00
21.1
2,337.87
1947
79,379.65
72,755.91
6,623.74
8.3
(6,252.23)
1948
81,256.50
68,912.98
12,343.52
15.2
(3,196.80)
Petitioner's spillage and overage of liquor did not exceed 10 per cent of the amount available for sale in each of the years 1944 to 1948. During the taxable years *123 petitioner gave customers who purchased two drinks of liquor or wine a third drink free. Petitioner's liquor licenses in the taxable years from the city of Minneapolis were "on-sale" licenses under Chapter 15 of the liquor ordinance which allowed him to sell liquor, beer, and wine on the premises. Petitioner and his bartenders sold some liquor by the bottle and by the case during each of the taxable years. The liquor ordinance of Minneapolis and the laws of Minnesota prohibit the serving of free drinks and the sale of liquor in bottles and by the case, i.e., other than by the drink for consumption on the premises, under "on-sale" licenses. Petitioner's business operations were substantially the same during the years 1941 through 1948. The same policy and practice was followed in each year with respect to sales made other than by the drink, the size of the measure used, the method of pouring liquor, the method of entering daily sales in the cash books, spillage, and the preparation of Federal income tax returns. Petitioner worked the same hours and found the same months of the year to be uniformly the most profitable months. Petitioner's best business hours were from 3:30 *124 p.m. to 6 p.m.; his best days for business were Friday and Saturday; the best month for business was December, and the worst months for business were January, February, and March. His business receipts were substantially less in the month of January than in the month of December of each year. Petitioner employed two bartenders in each of the years 1941, 1942, 1943, 1944, and 1945; he employed three bartenders in 1946, 1947, and 1948. Ambrose J. "Bud" Mack, petitioner's nephew, worked for petitioner as a bartender from 1937 until 1955. Edward W. "Eddie" Pawloski, petitioner's son-in-law, worked for petitioner as a bartender from October 14, 1945, until 1955. Andrew "Andy" Stanoch, petitioner's nephew, worked for petitioner as a bartender from 1939 or 1940 until 1941, and from December 1945 through 1948. Petitioner stored his liquor in the basement of his bar. The storeroom was locked and petitioner alone had the key thereto. Petitioner purchased liquor dispensing machines for use in his bar in September 1953. Petitioner opened savings account at the Farmers and Merchants Savings Bank in Minneapolis on December 11, 1945. The balance in this account was $151.18 on April 26, 1950. *125 During the years 1944 and 1946, petitioner purchased United States Savings Bonds in the face amounts of at least $9,000 and $8,000, respectively, all of which were unredeemed on August 28, 1950. Petitioner constructed a new personal residence during the taxable years at a cost of $29,099, all of which was paid prior to August 28, 1950. A proper method for reconstructing the income from petitioner's bar business for each of the years 1944-1948, inclusive, is the measurement, or drink, method, using as the measurement for sales of liquor a 1-ounce drink, allowing 10 per cent for spillage of liquor, and allowing every third drink free; and allowing, also, for spillage of beer as follows: Allowance for Beer Spillage
1944
$378.18
1945
158.40
1946
265.32
1947
269.29
1948
231.66
Reconstruction of the gross and net receipts from petitioner's bar business from the sales of liquor, wine, and beer is necessary because petitioner's method of accounting employed in the years 1944-1948 did not clearly reflect the income for each year. Reconstruction of annual income by the use of the measurement method reflects the income realized. A 10 per cent markup on the *126 cost of candy, and like items sold, and on tobacco products is proper. Income of $7.50 per week from pinball machines is correct. In each of the years 1944-1948, petitioner's total sales, increased for excessive cost of goods sold reported in petitioner's returns, and decreased for beer spillage, were as follows: 1944
Gross receipts
$ 57,678.70
Merchandise purchases overstated
224.90
$ 57,903.60
Less beer spillage
378.18
Corrected gross receipts
$ 57,525.42
1945
Gross receipts
$ 72,302.39
Merchandise purchases overstated
694.29
$ 72,996.68
Less beer spillage
158.40
Corrected gross receipts
$ 72,838.28
1946
Gross receipts
$ 76,099.53
Merchandise purchases overstated
69.56
$ 76,169.09
Less beer spillage
265.32
Corrected gross receipts
$ 75,903.77
1947
Gross receipts
$104,398.94
Merchandise purchases overstated
2,082.64
$106,481.58
Less beer spillage
269.29
Corrected gross receipts
$106,212.29
1948
Gross receipts
$ 98,114.54
Merchandise purchases overstated
478.25
$ 98,592.79
Less beer spillage
231.66
Corrected gross receipts
$ 98,361.13
Petitioner understated the amount of his taxable income *127 in his returns for each of the taxable years, derived from the operation of his business and from interest, in the following amounts, as is shown in the following tabulation: $9,138.62 for 1944; $5,713.26 for 1945; $4,486.23 for 1946; $26,929.89 for 1947; and $17,106.81 for 1948. He failed to report income in the above amounts for each of the taxable years: 1944
Corrected receipts
$ 57,525.42
Receipts reported in return
48,386.80
Unreported business receipts
$ 9,138.62
1945
Corrected receipts
$ 72,838.28
Receipts reported in return
67,170.50
Unreported business receipts
$ 5,667.78
Plus unreported interest
45.48
Unreported income
$ 5,713.26
1946
Corrected receipts
$ 75,903.77
Receipts reported in return
71,622.50
Unreported business receipts
$ 4,281.27
Plus unreported interest
204.96
Unreported income
$ 4,486.23
1947
Corrected receipts
$106,212.29
Receipts reported in return
79,379.65
Unreported business receipts
$ 26,832.64
Plus unreported interest
97.25
Unreported income
$ 26,929.89
1948
Corrected receipts
$ 98,361.13
Receipts reported in return
81,256.50
Unreported business receipts
$ 17,104.63
Plus unreported interest
2.18
Unreported income
$ 17,106.81
*128 The following schedule shows petitioner's unreported income from his business and interest for each of the taxable years and the net income or loss disclosed by petitioner's returns: Net Income or
Unreported
Loss Reported
Year
Income
in Returns
1944
$ 9,138.62
$ (570.30)
1945
5,713.26
4,869.85
1946
4,486.23
1,843.25
1947
26,929.89
(6,078.65)
1948
17,106.81
(2,896.80)
$63,374.81
[2,832.65)
Petitioner filed false and fraudulent returns for each of the years 1944-1948, inclusive, and part of the deficiency for each year was due to fraud with intent to evade tax. For each of the taxable years there was a substantial underestimate of estimated tax by petitioner within the provisions of section 294(d). Opinion HARRON, Judge: The first question is whether the respondent was justified in disregarding petitioner's accounting records of the receipts of his bar business for the years 1944-1948, inclusive, and resorting to a method for reconstructing the income of petitioner's bar business. Each taxpayer is required by law to make a return of his true income. He must, therefore, maintain such accounting records as will enable him to *129 do so. Section 54, 1939 Code. Regulations 111, section 29.54-1, require that a taxpayer shall keep such permanent books of account, including inventories, as are sufficient to establish the amounts of gross income, deductions, and other matters so as to enable the Commissioner to determine the correct amounts of income subject to tax. But if a taxpayer's records are inadequate, inaccurate, or otherwise unsatisfactory, the Commissioner may compute the amount of taxable income by using such method as in his opinion clearly reflects the income, and he may look to other information than the taxpayer's records to discover the full and correct amount of taxable income, and to assess and collect the full tax liability imposed by law. Sec. 41; , affd. ; , affd. . There are 167 marks of erasure and alteration in petitioner's records of cash receipts, or sales, for the years 1944-1946, and 1948. The alterations appear uniformly in the $100 column on the best days of business. Many of the alterations reduced the original entry by $100 *130 or $200. The only explanation offered was that such erasures and alterations were made to correct errors. Such explanation is unsatisfactory, and results in the conclusion that petitioner's books have no value as evidence in supporting his claim that the amounts of income reported in his returns were true, accurate, and correct. . Petitioner's cash receipts were shown on cash registers. But, the cash register tapes were not retained. Therefore, petitioner's original accounting records were incomplete. Bookkeeping entries are not determinative of tax liability, although in some instances they are of evidential value. . The real facts, not mere bookkeeping entries, control in tax controversies, as well as in other disputes. In order for books of account to be entitled to any probative force, they must be fairly and honestly maintained. As was said in , books of account "cannot be given evidential value (absent a satisfactory explanation) when suspicious marks of erasure and alteration in a material respect appear *131 on them. 32 C.J.S., Evidence, par. 685f, p. 563. Indeed, an affirmative, willful attempt to defeat or evade taxes may be 'inferred from * * * making false entries or alterations (in books of account) * * *.'" The records of substantially all of petitioner's purchases of liquor, wine, and beer were retained by the vendors, Ed. Phillips and Sons and the Minneapolis Brewing Company. Such purchases were in quantities and amounts which on their face raise a question whether petitioner's returns, which were made up from his books, reported all of the actual sales and receipts. The returns for 1944, 1947, and 1948 showed losses from the bar business of $570.30, $6,078.65, and $2,896.80, respectively; and the returns for the years 1945 and 1946 showed net sales of $4,869.85 and $1,843.25, respectively. For the 5 years, the returns showed a loss of $2,832.65 from the operation of the bar business. Petitioner's books did not represent a full, complete, and accurate record of all of the receipts of his bar business during the 5 years involved. Petitioner has failed to establish that his books reflected the full and true income of the business for each year. It is not a sufficient showing *132 for petitioner to testify that his books and his returns were correct. Indeed, he admits that for some of the years, his returns did not reflect all of the income of the business. Under all of the circumstances and upon the entire record, it must be concluded that the respondent was justified in exercising the authority given to him in section 41 in disregarding petitioner's accounting records and in resorting to the measurement method of reconstructing the income of the business for each year. It is now well established that where adequate records are not available for the taxable period, the Commissioner may determine the amount of income received by a taxpayer upon any reasonable basis. ; . Furthermore, the net income of the business determined by the use of the measurement method, using a 1-ounce measure of the drinks sold, is substantially in excess of the net income of the business shown in the returns. This is cogent evidence of the unreliability of the books and that there is unreported income. , affd. ; *133 . The next question involves determining the correct amount of the net income from the bar business for each of the 5 years 1944-1948, inclusive. The respondent's method of reconstructing income for each year was the measurement, or drink, method in which he assumed that petitioner used a three-quarter-ounce shot glass, or measure, in measuring the amount of drinks sold. The petitioner does not disagree with the respondent's figures for his inventories at the end of each year and for his purchases in each year of liquor, wine, and beer; he does not disagree with the figures used by respondent for the prices charged in each year for drinks of various brands of liquor. Respondent, in his reconstruction, allowed 10 per cent of the total liquor and wine sold for spillage, waste, and breakage. Petitioner does not disagree with that factor. Petitioner contends that in the event it is held that the respondent was justified in disregarding the accounting records for the business and that it was proper for the respondent to reconstruct income by use of the measurement method, then the proper measure to use is a 1-ounce measure. Petitioner also *134 contends that he is entitled to an allowance for beer spillage. It is concluded that respondent erred in not allowing for beer spillage and it is found that for each year, the amount to be allowed for beer spillage is the amount set forth in the Findings of Fact. The measurement, or drink, method of reconstructing the income of a bar business is an established and generally approved method. The respondent was justified in using that method here. Petitioner concedes that the general method, if correctly used here, would provide a reasonably fair way of reconstructing his income. The crux of the dispute is whether it was reasonable for the respondent to use as the measure a three-quarter-ounce drink. Petitioner testified that during the years involved he used not less than a 1-ounce measure. Petitioner's testimony stands unrefuted. Respondent, who has the burden of proof under the fraud issue, did not produce any direct or rebuttal evidence that it was a general practice in bars of the type that petitioner operated to use a three-quarter-ounce measure during the years before us, or that petitioner actually used such measure. Petitioner presented the testimony of his bartenders *135 to support and corroborate his claim that throughout the years involved a measure of not less than 1 ounce was used. Their testimony was not refuted. Upon the entire record it is concluded that petitioner used a measure of not less than 1 ounce, and that the proper method for reconstructing the income of the business for the taxable years is the measurement method using a 1-ounce measure. There are in the record two computations of reconstructed income; one employs the three-quarter-ounce measure, on which the deficiencies are based; the other uses the 1-ounce measure. We are able, therefore, to determine the amount of the net income of the bar business for each year by applying the 1-ounce measure reconstruction. In our opinion, it provides a reasonable and fair reconstruction of net income, and it is approved. It is concluded that respondent's use of the three-quarter-ounce measure was arbitrary and incorrect. In determining the deficiencies, respondent determined that in the returns petitioner overstated for each year the cost of purchases of merchandise. Petitioner does not contest those determinations. They are sustained. Based upon the 1-ounce drink method of reconstructing *136 the bar business income, taking into account the uncontested adjustments of the respondent of excessive amounts in the returns for purchases, and allowing for beer spillage it is found and concluded that petitioner's bar business income was in the amount for each year stated in the Findings of Fact, and that petitioner failed to report in his returns net income from the bar business of at least $9,138.62 for 1944; $5,667.78 for 1945; $4,281.27 for 1946; $26,832.64 for 1947; and $17,104.63 for 1948. Petitioner admits that he failed to report interest he received in each of the years 1945-1948, inclusive. He therefore failed to report income in at least the amounts stated in the Findings of Fact. In determining the deficiencies, the respondent made mathematical adjustments in the allowable amounts of medical and dental expense deductions based upon his determinations of petitioner's taxable income for each year. Since the respondent's determination of the amount of taxable income for each year is sustained in part only, there must be a recomputation under Rule 50 of the amount of the allowable medical expense deduction for each year. Having determined that petitioner failed to *137 report all of his income for each of the taxable years, we now turn to the question whether such understatement of income for each year was due to fraud with intent to evade tax. Deficiencies for all of the years are barred unless a false or fraudulent return was filed for each year. Sections 275(a), 276(a). It is concluded that the respondent has met his burden of proving by clear and convincing proof that a false and fraudulent return with intent to evade tax was filed for each year and that part of each deficiency is due to fraud with intent to evade tax. . To establish fraud by direct proof of intent is rarely possible. However, this Court has held that consistent understatements of a substantial amount of income over a period of several years without tenable or satisfactory explanation strongly evidence an intent to defraud the . See, also, , affirming ; and , rehearing denied . In his returns, petitioner reported for the 5 years *138 1944-1948 a net loss from his bar business of $2,832.65. We have found that for the 5 years the net income of the business was $63,374.81. The understatements of income are too large and too continuous and persistent to be attributable to mere inadvertence or negligence. Petitioner had the requisite knowledge of business operations to fulfill his duty to report all of his income from his business for each year. A willful intent to evade tax may be inferred, also, from petitioner's consistent and extensive alteration of the amounts of the cash receipts of the business in the books, and the making of false entries. . Petitioner failed to give a reasonable or satisfactory explanation of the alterations of entries in his books. Petitioner gave the respondent's agents false information about his assets and the cost thereof, and about his bank account, during their investigation. Since false and fraudulent returns were filed the deficiencies are not barred. The respondent's addition of 50 per cent of each deficiency under section 293(b) is sustained. The last question is whether an addition to tax for each year under section 294(d)(2) *139 is proper. It appears to be clear from our findings with respect to the amount of petitioner's unreported income for each year that 80 per cent of the correct tax for each year exceeds the estimated tax declared in the estimates. On brief, petitioner has not made any contention that the additions under section 294(d)(2) should not be sustained. Accordingly, it is understood that this matter is to be agreed upon under Rule 50, at which time there will be recomputation of the amounts of the additions, if any, under section 294(d)(2), in accordance with the determinations of the Court relating to the correct amount of tax liability for each year. Decision will be entered under Rule 50.